STATE ex rel. J. E. MERRELL v. W. P. WHITMIRE.

*Elections—Evidence—Appeal—Assignment of Error—Trial—*
*Special Instructions.*

1, Upon the trial of an action involving the regularity of an election, there was evidence tending to show that the returns from one voting place had been altered surreptitiously by a friend and partisan of the defendant: *Held,* that the declaration of such partisan, not made in the presence of defendant, was not competent—he not having been examined as a witness.

2. The Supreme Court will not assume that the facts stated in an assignment of error are true, when the case on appeal, settled by the trial Judge, contains no statement of such facts

3. Requests for special instructions should be in writing and presented to the Court before the close of the evidence.


This was a CIVIL ACTION to try the title to the office of Register of Deeds of the county of Transylvania, tried before *Merrimon, J.,* at the Fall Term, 1891, of the Superior Court of HAYWOOD County, to which the action had been removed.

The relator insisted that the returns from Dunn's Rock township were changed after they were signed by the judges of election, and before they reached the board of canvassers, by changing the number of votes received by W. P. Whitmire from sixty-one to sixty-three.

There was evidence offered by the relator tending to prove that Whitmire received only sixty-one votes in Dunn's Rock township. All the judges of election testified to facts and circumstances tending to show this. The defendant offered evidence tending to show that he had received sixty-three votes. One of the judges of election was chosen to carry up the returns to the board of canvassers, and they were delivered to him for that purpose, and he left them over-

night at the house of one Bryson, who lived four miles from the court-house of the county.

Bryson, at whose house the returns were left, testified that he went to bed about 9 o'clock, and that sometime in the night T. T. Loftis and Back Summey came to his house and asked to see the returns, to settle a dispute about the votes for Clerk, as they claimed; that they got the returns and examined them by the light from the fireplace, but he did not know whether they meddled with the returns or not.

The relator then offered to show by one Lance that he heard Loftis say that he had altered the returns of the vote of Whitmire from Dunn's Rock township, and in this connection, and as a ground for the admission of said Loftis' declaration, to show that Loftis was a partisan of the defendant. The defendant objected to this evidence. The Court sustained the objection, and the relator excepted.

The relator attacked the vote of Hogback township for that the registrar of voters for that township was not qualified to act as such; that no boxes were used at said voting precinct; that hats were used instead of boxes; that the registration laws were not observed, in that the voters were not required to give their age, place of residence, place of birth, nor occupation, and M. Revis and William Britton were allowed to vote for defendant, not being residents of the State nor qualified electors.

The relator then handed to the witness a number of books, among which he identified the registration book of Hogback, but it was not otherwise put in evidence anytime during the trial. It was not read to the jury, nor did the relator offer to read it to them. The relator offered no evidence to show that the registrar of voters for Hogback township was not qualified to act as such. The only evidence that the registration laws were not observed in said township, was the identification of the registration book by the defendant, as above stated.

After the argument of the case was opened, counsel for the relator handed to the Court a written request for special instructions, which were refused.

There was judgment for defendant, and plaintiff appealed.

*Mr. V. S. Lusk,* for plaintiff.
No counsel *contra.*

CLARK, J.: The offer of the plaintiff to show by a witness that he had heard T. T. Loftis say that he had altered the returns of Dunn's Rock township was properly denied. If Loftis had been a party to the action, his admissions against his interest would have been competent, as would have been his declarations as to his qualification to vote when made at the time of voting, or prior thereto, if his vote were in controversy. *Boyer* v. *Teague,* 106 N. C., 576. If he had made the alleged statements in presence of the defendant without his denying the charge, the evidence might have been received on the ground of the implied admission by the defendant's silence, if the circumstances were such as to call for notice of the remark by him; or if Loftis had been a witness in the case, his previous statements in regard to the matters testified to by him should have been received to corroborate or contradict him. But the "hearsay" evidence here does not come within any of the exceptions. That Loftis was a friend or partisan of the defendant, could not make his *ex parte* unsworn statements competent evidence against the defendant, any more than similar statements by anyone friendly to any other litigant could be received as evidence against him.

The exception that the Court did not "submit to the jury the evidence as to the voting in Hogback township," cannot be sustained. It does not appear that the Court excluded such evidence, nor is there any suggestion to that effect beyond the bare assignment of it as error. We cannot

110—24

assume that the assignment of error is a correct statement of the facts therein recited, when such facts do not appear in the case stated by the Court. *Walker* v. *Scott*, 106 N. C., 56. The registration books and the poll-books of Hogback and other townships were identified by a witness, but the case states that the books themselves "were not put in evidence, nor were read to the jury, nor did the plaintiff offer to read them, and the only evidence that the registration laws were not observed in said township was the identification of the registration books." If, indeed, however, there was an omission to charge in a particular aspect of the case, it was not error, unless the Judge was asked to do so. *Terry* v. *Railroad*, 91 N. C., 236; *State* v. *Bailey*, 100 N. C., 528; *Bethea* v. *Railroad*, 106 N. C., 279.

The requests to charge, handed up after the argument begun, were too late. They should have been asked at or before the close of the evidence. *The Code*, §§ 414, 415. It is but fair to the opposite side, and in the interest of the regular and impartial administration of justice, that requests to charge should be asked in writing and within the time prescribed by the statute, so that there may be time for the Judge to consider the requests during the argument of counsel to the jury. Some time must be fixed after which it is too late for the party asking the prayers to insist upon their being granted. The requirements of the law in this regard are well known, and it is the plaintiff's own fault that he did not observe them, and hand up his requests to charge in proper time. This rule of practice has been recently reaffirmed in *Posey* v. *Patton*, 109 N. C., 455, in which case the authorities are cited, and the reason for the law noticed.

The defendant contested the vote of one Tompkins; and the Court instructed the jury that "if Tompkins, who was a married man, came to the county of Transylvania not intending to become a resident of the county, but to take charge of and conduct a newspaper until after the election, and then

go away, and left his family in the county of Jackson, and his family resided in the county of Jackson, and remained there until the 14th of September, before coming to Transylvania County, he was not entitled to register and vote in Transylvania County, unless it was ninety days from the time his family came into the county to the day of election." It was admitted that if Tompkins was not a resident of the county until his family came there to reside, he had not been a resident of the county ninety days before the election. The plaintiff excepted to this instruction. If erroneous, it is so only on the ground that the jury might understand it to mean that though Tompkins had come into the county temporarily, intending to remain only to conduct a paper during the canvass and leave after the election, yet he would be a competent voter if he came ninety days before the election and brought his family with him. *The Code,* § 2680. This would not be an error of which the plaintiff could complain.

Affirmed.